Citation Nr: 1629298 
Decision Date: 07/22/16 Archive Date: 08/01/16

DOCKET NO. 13-00 342 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Newark, New Jersey


THE ISSUES

1. Entitlement to service connection for a left thumb disability.

2. Entitlement to an increased rating in excess of 10 percent for bilateral hearing loss.

3. Entitlement to service connection for a respiratory disability, to include as due to asbestos exposure.

4. Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD) and major depressive disorder.

5. Entitlement to service connection for sleep apnea, to include as due to PTSD.

6. Entitlement to service connection for vertigo, to include as due to service-connected bilateral hearing loss.



REPRESENTATION

Veteran represented by: John P. Dorrity, Agent


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

S. Gordon, Associate Counsel


INTRODUCTION

The Veteran served on active duty from July 1964 to October 1967.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from November 2010 and July 2015 rating decisions by the Department of Veterans Affairs (VA) Regional Office (RO) in Newark, New Jersey.

In February 2016, the Veteran, sitting at the RO, testified at a Board hearing before the undersigned. 

The issues of entitlement to service connection for a respiratory disability, to include as due to asbestos exposure, entitlement to service connection for an acquired psychiatric disorder, to include PTSD and major depressive disorder, entitlement to service connection for sleep apnea, to include as due to PTSD, and entitlement to service connection for vertigo, to include as due to service-connected bilateral hearing loss are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDINGS OF FACT

1. Arthritis of the left thumb was not manifest during active service or within one year of the Veteran's separation from active service; a left thumb disability including arthritis is not attributable to active service. 

2. Throughout the period on appeal, the Veteran's service-connected bilateral hearing loss has been manifested by no worse than level II hearing acuity in the right ear and level II hearing acuity in the left ear.


CONCLUSIONS OF LAW


1. The criteria for entitlement to service connection for a left thumb disability, to include arthritis, have not been met. 38 U.S.C.A. §§ 101, 1101, 1110, 1112, 1113, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.6, 3.102, 3.303, 3.307, 3.309, 3.310 (2015).

2. Throughout the period on appeal, the criteria for a rating higher than 10 percent for bilateral hearing loss have not been met. 38 U.S.C.A. §§ 1155, 5107(a) (West 2014); 38 C.F.R. §§ 4.85, 4.86, Diagnostic Code 6100 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating claims for VA benefits. 38 U.S.C.A. §§ 5103, 5103A (West 2014) and 38 C.F.R. § 3.159 (2015). In the instant case, VA provided adequate notice in letters sent to the Veteran in September 2010 and March 2015.

VA has a duty to assist a claimant in the development of a claim. This duty includes assisting the claimant in the procurement relevant treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. §3.159. 

The Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993). The evidence of record contains service treatment and personnel records, post service VA and private treatment records, lay statements, and VA examination reports. There is no indication of relevant, outstanding records that would support the Veteran's claims decided herein. 38 U.S.C.A. § 5103A(c); 38 C.F.R. § 3.159(c)(1)-(3).

The United States Court of Appeals for Veterans Claims has held that the provisions of 38 C.F.R. § 3.103(c)(2) (2015) impose two distinct duties on VA employees, including Board personnel, in conducting hearings: the duty to explain fully the issues and the duty to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010) (per curiam). 

At the Veteran's hearing, the issues on appeal were identified and he was asked about his treatment providers in order to ascertain whether there was additional evidence to be submitted. Hence, the Bryant duties were met.

After a careful review of the file, the Board finds that all necessary development has been accomplished, and therefore appellate review may proceed without prejudice to the Veteran. See Bernard v. Brown, 4 Vet. App. 384 (1993).

II. Analysis

A. Left Thumb

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303. "To establish a right to compensation for a present disability, a veteran must show: '(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service'-the so-called 'nexus' requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). 

Service connection will be presumed for certain specific chronic diseases, such as arthritis, if manifested to a compensable degree within one year of separation from active service, even if there is no evidence of the disease during service. 38 U.S.C.A. §§ 1112, 1113 (West 2014); 38 C.F.R. § 3.307(a); 3.309(a) (2015). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination, the benefit of the doubt is afforded to the claimant. 38 U.S.C.A. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

The Veteran asserts that he injured his left thumb in service and now suffers from a disability as a result.

Service treatment records (STRs) are silent as to complaints of or treatment for a left thumb injury. 

In a July 2010 handwritten statement by the Veteran's crewmate, he attested to the Veteran's in service injury to his left thumb. He stated that during a temporary repair process, the Veteran was injured on his left hand by a falling 6x6 piece of timber that was going to be used to shore up the hole in the hull. A few hours later, he noticed the Veteran's left thumb was immensely swollen, scraped, and the outer skin was broken. The Veteran provided similar testimony at his February 2016 Board hearing. See February 2016 Hearing Transcript, pp. 4-5. He related that he did not seek treatment in service because he was "a tough guy." Id. at p. 6.

In a September 2010 letter by private treating physician, Dr. J. M., he stated that the Veteran came to his office for a physical in June 2010. During the examination, the Veteran reported that his left thumb had been bothering him with pain. Dr. J. M. asked him if he ever injured his thumb and he said it was injured many years ago when he was in the Navy. He stated that a large piece of timber fell on his hand while he was working with it, but said he never had it examined. Dr. J. M. stated that an x-ray report shows thumb shows signs of arthritis. He then opined that it was more than likely than not that the Veteran's left thumb arthritis is a result of his military service.

The Veteran was afforded a VA examination in November 2012. He was diagnosed with left thumb arthritis. The Veteran described the details of his in service injury and reported that his thumb had hurt for many years. He further reported diminishing strength in the left thumb for about 20 years. Upon review of the Veteran's claims file and examination, the examiner stated that "the Veteran's STRs failed to reveal any mention of the Veteran's left thumb. As the Veteran reported, there was no medical visit at the time and there was no mention on his separation physical. In fact, I have no documentation of a problem with his thumb until 2010. There is a buddy statement which verifies that his thumb sustained trauma in 1967 but no evidence of an ongoing problem over the ensuing 43 years. X-rays today reveal mild arthritic changes. If the trauma in 1967 were sufficiently severe to cause a problem 43, now 45, years later one would expect to see more substantial arthritic changes. In light of all of the above, I am forced to opine that it is less likely than [not] that his current left thumb arthritis is caused by or due to an injury to his thumb sustained on March 17, 1967."

The Board affords great probative weight to the November 2012 VA examiner's opinion, which is based upon a review of the Veteran's medical history, is factually accurate, fully articulated, and supported by sound reasoning. Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). 

In this regard, the Board has considered the private physician's opinion, but finds that it is not adequate to support a finding of service connection. Notably, a medical opinion arising from a medical examination is considered adequate "where it is based upon consideration of the veteran's prior medical history and examinations and also describes the disability, if any, in sufficient detail so that the Board's 'evaluation of the claimed disability will be a fully informed one.'" See Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007) (quoting Ardison v. Brown, 6 Vet. App. 405, 407 (1994)). The opinion "must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions." Stefl, 21 Vet. App. at 124.

In the instant case, the private physician provided no rationale for his opinion. Although there are no reasons or bases requirements imposed on a medical examiner, Ardison, supra, the standards of adequacy for private and VA medical opinions are the same. See Stefl, supra. As the private physician provided no support for his favorable opinion, the Board concludes that it is of less probative value.

Rather, the Board finds more persuasive the VA examiner's opinion, which is supported by the reasons stated therein. There is no indication that the examiner failed to consider any piece of relevant evidence before providing his opinion. The Board also finds no reason to discount the medical opinion based on the physician's expertise and qualifications as a medical professional. Although the Veteran believes that his left thumb disability is due to service, as stated above, the etiology of dysfunctions and disorders is generally a medical determination. See Jandreau, supra. Here, the Veteran, as a lay person without the appropriate medical training and expertise, is not competent to make such an etiological conclusion, especially in light of the VA examiners' conclusion to the contrary. See Jandreau and Espiritu, both supra. Thus, the most probative evidence regarding a potential nexus is the November 2012 VA examiner's opinion which weighs against the Veteran's claim.

Moreover, there is no evidence of record that the Veteran had degenerative arthritis of the left thumb during active service, or within one year of separation from active service, such that the presumptive provisions regarding service connection for chronic diseases are inapplicable. 38 C.F.R. § 3.307, 3.309.

For all the foregoing reasons, the Board finds that the claim for service connection for a left thumb disability must be denied. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102, Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

B. Bilateral Hearing Loss 

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) and are intended to represent the average impairment of earning capacity resulting from disability. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. Disabilities must be reviewed in relation to their history. 38 C.F.R. § 4.1. Other applicable, general policy considerations are: interpreting reports of examination in light of the whole recorded history; reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability, 38 C.F.R. § 4.2; resolving any reasonable doubt regarding the degree of disability in favor of the claimant, 38 C.F.R. § 4.3; where there is a question as to which of two evaluations apply, assigning a higher of the two where the disability picture more nearly approximates the criteria for the next higher rating, 38 C.F.R. § 4.7; and, evaluating functional impairment on the basis of lack of usefulness, and the effects of the disabilities upon the person's ordinary activity, 38 C.F.R. § 4.10. See Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary concern. Although a rating specialist is directed to review the recorded history of a disability in order to make a more accurate evaluation, see 38 C.F.R. § 4.2, the regulations do not give past medical reports precedence over current findings. Francisco v. Brown, 7 Vet. App. 55 (1994). Nevertheless, the Board acknowledges that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. See Hart v. Mansfield, 21 Vet. App. 505 (2007).

Evaluations of defective hearing range from noncompensable to 100 percent based on organic impairment of hearing acuity as measured by the results of a controlled speech discrimination test (Maryland CNC) together with the average hearing threshold level measured by puretone audiometry tests in the frequencies of 1000, 2000, 3000, and 4000 cycles per second (Hertz). To evaluate the degree of disability from service-connected defective hearing, the rating schedule establishes 11 auditory hearing acuity levels designated from Level I, for essentially normal hearing acuity, through Level XI, for profound deafness. 3 8 C.F.R. §§ 4.85, Tables VI and VII, Diagnostic Code 6100 (2015). Disability ratings for hearing loss are derived from a mechanical application of the rating schedule to the numeric designations resulting from audiometric testing. See Lendenmann v. Principi, 3 Vet. App. 345 (1992).

An exceptional pattern of hearing impairment occurs when the puretone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hertz) is 55 decibels or more. In that situation, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIA, whichever results in the higher numeral. 38 C.F.R. § 4.86(a) (2015). Further, when the average puretone threshold is 30 decibels or less at 1000 Hertz, and 70 decibels or more at 2000 Hertz, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIA, whichever results in the higher numeral. That numeral will then be elevated to the next higher Roman numeral. Each ear will be considered separately. 38 C.F.R. § 4.86(b).

The Board has reviewed all the evidence in the record. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by the appellant or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate each claim and what the evidence in the claims file shows, or fails to show, with respect to each claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) and Timberlake v. Gober, 14 Vet. App. 122, 128-30 (2000).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

A June 2015 VA audiological examination showed puretone thresholds of decibels 55, 60, 60, and 65 in the right ear and 55, 70, 70, and 75 decibels in the left ear at 1000, 2000, 3000, and 4000 Hertz ("specified frequencies"). The average puretone threshold was 60 decibels in the right ear and 68 decibels in the left ear. Speech audiometry revealed speech recognition ability of 96 percent in the right ear and 94 percent in the left ear. Applying the results from that examination to Table VI in 38 C.F.R. § 4.85 yields a finding of Level II hearing loss in the right ear and Level II hearing loss in the left ear. Where hearing loss is at Level II in one ear and Level II in the other, a noncompensable disability rating is assigned under Table VII. 38 C.F.R. § 4.86. The Board notes that the June 2015 audiogram results do not establish the requisite criteria for application of Table VIA. See 38 C.F.R. §§ 4.85, 4.86.

As the June 2015 VA testing results noted above do not yield findings to support assignment of a rating in excess of 10 percent for bilateral hearing loss, the Veteran is not entitled to a rating in excess of 10 percent for bilateral hearing loss for the period on appeal. 38 C.F.R. §§ 4.7, 4.21.

The Board has carefully considered the Veteran's assertions and other lay statements of record and in no way discounts the Veteran's asserted hearing difficulties or his assertions that his bilateral hearing loss should be rated higher. However, as noted above, the aforementioned VA examination of record was conducted in accordance with the requirements for a hearing impairment examination for VA purposes. See 38 C.F.R. § 4.85(a) (2015).

The lay statements are both competent and credible in regard to reporting worsening hearing acuity and functional effects. However, far more probative of the degree of the disability are the results of testing prepared by skilled professionals because the schedular criteria are predicated on audiological findings rather than subjective reports of severity of hearing loss. In essence, lay statements are of limited probative value. As a layperson, the Veteran is competent to report difficulties with his hearing; however, he is not competent to assign particular speech recognition scores or puretone decibel readings to his current acuity problems.

Additionally, it must be emphasized that the assignment of disability ratings for hearing impairment is derived by a mechanical application of the rating schedule to the numeric designation assigned after audiometry results are obtained. Hence, the Board has no discretion in this matter and must predicate its determination on the basis of the results of the audiology studies of record. See Lendenmann v. Principi, 3 Vet. App. 345 (1992). In other words, the Board is bound by law to apply VA's rating schedule based on the audiometry results. See 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. As such, a rating in excess of 10 percent for the period is not warranted.

Extraschedular Consideration

The Board has also considered the question of whether an extraschedular rating may be appropriate for the Veteran's service-connected bilateral hearing loss disability. See Bagwell v. Brown, 9 Vet. App. 15 (1966). Ordinarily, the VA Rating Schedule will apply unless there are exceptional or unusual factors which would render application of the schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993). According to the regulation, an extraschedular disability rating is warranted upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent period of hospitalization that would render impractical the application of the regular schedular standards. See 38 C.F.R. § 3.21(b) (1) (2014). 

In Martinak v. Nicholson, 21 Vet. App. 447, 453-4 (2007), the Court held that a VA audiologist must fully describe the functional effects caused by a hearing disability in the final report of the examination to facilitate determinations regarding extraschedular consideration. The Court noted that, unlike the rating schedule for hearing loss disability, 38 C.F.R. § 3.321(b) does not rely exclusively on objective test results to determine whether an extraschedular rating is warranted. See Martinak, 21 Vet. App. at 455. 

In this case, the aforementioned VA examiner of record specifically assessed the effects of the Veteran's hearing loss on his daily activities, noting that the Veteran's hearing loss made it difficult for him to have conversations with others without his hearing-aides. The Board finds that the VA examination report is in compliance with Martinak, and that the evidence of record is sufficient for the Board to consider whether referral for an extraschedular rating is warranted under 38 C.F.R. § 3.321(b).

Under Thun v. Peake, 22 Vet. App. 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, the Board must first determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the level of disability and symptomatology and is found to be inadequate, the Board must then determine whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the veteran's disability picture requires the assignment of an extraschedular rating. 

Here, the Veteran has not identified any factors which may be considered to be exceptional or unusual, and the Board has been similarly unsuccessful. The Veteran reports difficulty hearing and communicating with others. See February 2016 Board Hearing Transcript, p. 20. This is simply a result of the symptom of reduced hearing acuity which is expressly considered by the schedular rating criteria. There is no evidence in the record of an exceptional or unusual clinical picture as it would be normally expected that an individual with reduced hearing acuity would have difficulty hearing and communicating, especially in noisy environments. Rather, his description of his bilateral hearing loss symptomatology is consistent with the degree of disability addressed by his evaluations. 

Thus, the Board finds the schedular rating criteria contemplate the Veteran's symptoms of bilateral hearing loss and has determined that referral of the case for extraschedular consideration pursuant to 38 C.F.R. §3.321(b) (1) is not warranted.

In Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. 2014), the Federal Circuit held that "[t]he plain language of § 3.321(b)(1) provides for referral for extra-schedular consideration based on the collective impact of multiple disabilities." Here, however, the issue has not been argued by the Veteran or reasonably raised by the evidence of record. The Veteran has not asserted, and the evidence of record does not suggest, any such combined effect or collective impact of multiple service-connected disabilities that create such an exceptional circumstance to render the schedular rating criteria inadequate. Yancy v. McDonald, 27 Vet. App. 484, 495 (Fed. Cir. 2016) ("the Board is required to address whether referral for extraschedular consideration is warranted for a veteran's disabilities on a collective basis only when that issue is argued by the claimant or reasonably raised by the record through evidence of the collective impact of the claimant's service-connected disabilities"). The Board will therefore not address the issue further.

The issue of entitlement to a total disability rating based on individual unemployability (TDIU) is part and parcel of an increased rating claim when such claim is raised by the record or the veteran. See Rice v. Shinseki, 22 Vet. App. 447 (2009). However, there is no evidence that the Veteran has been precluded from substantially gainful employment due to his service-connected bilateral hearing loss during the appeal period. Indeed, the June 2015 VA examiner noted that the Veteran's hearing loss did not impact his ordinary conditions of daily life, including his ability to work. Thus, the Board finds that a TDIU claim has not been raised. See Id. 


ORDER

Entitlement to service connection for a left thumb disability is denied.

Entitlement to an increased rating in excess of 10 percent for bilateral hearing loss is denied.


REMAND

Respiratory Disability

The Veteran contends that he has a respiratory disability, to include as a result of in-service asbestos exposure. Post-service treatment records show that the Veteran has been diagnosed with chronic obstructive pulmonary disorder (COPD) and interstitial lung disease. During the Veteran's February 2016 Board hearing, the Veteran's representative testified to the Veteran having received treatment by Dr. M. P., who reported that the Veteran's diagnosis of interstitial lung disease was relative to exposure to asbestos. See February 2016 Hearing Transcript, p. 14. Upon review, it does not appear that such records have been associated with the Veteran's claims file. VA has a duty to assist claimants to obtain evidence needed to substantiate a claim. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c). Accordingly, remand is required to obtain these private treatment records. 

Acquired Psychiatric Disorder

Service treatment records are silent as to complaints and treatment for a psychiatric disorder. The Veteran's DD-214 reflects that he is in receipt of the Vietnam Service Medal.

The Veteran was afforded a VA PTSD examination in June 2012. While the examiner considered the Veteran's stressor statement and found that such was both adequate to support the diagnosis of PTSD and was related to his fear of hostile military activity, the examiner diagnosed the Veteran with major depressive disorder, mild, recurring, and not PTSD. The examiner based the diagnosis on stated symptoms of sleep impairment, anger and irritability, social avoidance and frequent fights and argument, along with obvious depressed affect. The examiner found that such would be the most appropriate diagnosis based on his history and diagnostic impressions. Upon examination, the Veteran stated that he met the diagnostic criteria for PTSD based on the various checked off symptoms that comprise PTSD. However, the examiner's diagnostic impressions favor a major depressive disorder, which also included many of the characteristic symptoms of PTSD. Therefore, based on his evaluation of the Veteran's mental status history and current symptoms, the examiner found the Veteran to be suffering from depression as opposed to PTSD. However, the examiner indicated that it was important to note that within his major depression, the Veteran did meet the various diagnostic criteria for a diagnosis of PTSD. In this specific case, due to the fact that he appeared to meet the necessary criteria for both diagnoses, the examiner used the Veteran's presentation and overall mental status as the final criteria used in determining the differential diagnosis of depression versus PTSD. The examiner concluded by stating that "the Veteran was charged with conspiracy to commit theft and received one year of supervised Pre-Trial Intervention (PTI) on or about 1983. This was a traumatic event that resulted in his termination as a New Jersey toll collector after 17 years of employment. The charges were dismissed after successful completion of PTI. However, this serves as a major milestone in his life and would be clearly associated with his current symptoms. Therefore, I would have to resort to pure speculation to determine whether current symptoms are related to his military service versus his legal problems with associated termination from work and having to complete a year of supervised probation."

In April 2016, the Veteran submitted a report of private psychological evaluation. Upon examination, the Veteran was diagnosed with PTSD and the examiner opined that his present difficulties are attributed directly to his experiences in the military.
 
Although it is clear that at the time of the June 2012 VA examination, the VA examiner found that the Veteran did not meet the diagnostic criteria for a diagnosis of PTSD, what is unclear is whether current symptoms of major depressive disorder are related to his military service. This is important because entitlement to service connection can be established if the Veteran has a disability at any point during the course of the appeal, even if such disability subsequently resolves. See McLain v. Nicholson, 21 Vet. App. 319, 321 (2007); see also Romanowsky v. Shinseki, 26 Vet. App. 289 (2013). Accordingly, the Board finds that a clarifying opinion should be obtained. Additionally, given the conflicting diagnoses of PTSD, the Board finds that a medical opinion is necessary to determine whether the Veteran's symptoms support a diagnosis of PTSD at any time during the appeal period.

Sleep Apnea

The Veteran indicated in his February 2015 claim that he is claiming service connection for sleep apnea as secondary to PTSD. A September 2014 private treatment record reflects a diagnosis of sleep apnea. VA treatment records also show that the Veteran has been issued a CPAP machine. As this matter is inextricably intertwined with the matter of service connection for PTSD, it is remanded to the RO for further consideration along with the PTSD claim, and appellate adjudication on it is deferred pending resolution of the matter of service connection for PTSD.

Vertigo 

The Veteran contends that his vertigo is related to his service-connected bilateral hearing loss. A review of the Veteran's STRs was absent for any complaints or treatment of dizziness or vertigo. At his April 2016 Board hearing, the Veteran testified that he sought treatment from a private physician for vertigo. 

The Veteran was administered a VA examination in June 2015. At this examination, the examiner opined that the Veteran's vertigo "which is non-incapacitating started over 40 years after his military service. After review of his [history and claims file], I feel it is less likely than not that his vertigo is due to his military service or the hearing loss." In regards to addressing secondary service connection, the language "due to" is language of causation rather than aggravation. Furthermore, the examiner provided no rationale to support the unfavorable causation opinion. Accordingly, the Veteran's claims file should be returned to the June 2015 examiner for an addendum opinion.

Finally, records of ongoing VA treatment must also be obtained.

Accordingly, the case is REMANDED for the following action:

1. Obtain all outstanding VA medical records and associate them with the virtual claims file. 

All efforts to obtain these records must be documented. Such efforts should continue until they are obtained, it is reasonably certain that they do not exist, or that further efforts would be futile. 

2. Ask the Veteran to provide authorization for VA to obtain all records of private treatment from Dr. M .P. in Jersey City, New Jersey and inform him that, in the alternative, he may obtain and submit the records himself.

3. Return the claims file, to include a copy of this remand, to the June 2012 VA PTSD examiner for an addendum opinion. If the examiner who drafted the June 2012 opinion is unavailable, the opinion should be rendered by another appropriate medical professional. The need for another examination is left to the discretion of the medical professional offering the addendum opinion. The claims file and a copy of this Remand must be made available to the reviewing examiner, and the examiner shall indicate in the addendum report that the claims file was reviewed.

Following a review of the claims file, the reviewing examiner is to reconcile the conflicting diagnoses and offer an opinion as to the following:

a) Has the Veteran met the criteria for a diagnosis of an acquired psychiatric disability, to include PTSD and major depressive disorder, at any point during the appeal period even if such disability subsequently resolved?

b) If you determine that the Veteran has not met the criteria for a diagnosis of PTSD at any point during the appeal period, please explain why the private assessment of PTSD in April 2016 is not valid.

c) If you determine that the Veteran has met the criteria for a diagnosis of PTSD at any point during the appeal period, identify the stressor or stressors upon which the diagnosis is based.

The examination report must include a complete rationale for all opinions expressed. 

4. Return the claims file, to include a copy of this remand, to the June 2015 VA ear conditions examiner for an addendum opinion. If the examiner who drafted the June 2015 opinion is unavailable, the opinion should be rendered by another appropriate medical professional. The need for another examination is left to the discretion of the medical professional offering the addendum opinion. The claims file and a copy of this Remand must be made available to the reviewing examiner, and the examiner shall indicate in the addendum report that the claims file was reviewed.

Following a review of the claims file, the reviewing examiner is asked to furnish an opinion with respect to the following questions:

(a) Is it at least as likely as not (a 50 percent or greater probability) that the Veteran's vertigo was caused by his service-connected bilateral hearing loss. 

(b) If the examiner provides a negative opinion as to question (a) above then the examiner must provide an opinion as to whether it is at least as likely as not (a 50 percent or greater probability) that the Veteran's vertigo was aggravated (i.e. worsened) by his service-connected bilateral hearing loss. If the examiner finds that the Veteran's vertigo was aggravated by his hearing loss, the examiner must attempt to establish a baseline level of severity of the vertigo prior to aggravation by the hearing loss.

The examination report must include a complete rationale for all opinions expressed. 

5. Following any additional indicated development, the originating agency should review the claims file and readjudicate the issues on appeal. If a benefit sought is not granted, the Veteran and his representative should be provided with a supplemental statement of the case. An appropriate period of time should be allowed for response before the case is returned to the Board.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).



This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).





______________________________________________
M. HYLAND
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs